**RECEIVED**
**IN ALEXANDRIA, LA.**

**DEC 1·9 2012**

TONY R. MOORE, CLERK
BY _____
DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

RENNY PLESSALA,
        Appellant

CIVIL ACTION
1:11-cv-01493

VERSUS

U.S. COMMISSIONER OF SOCIAL
SECURITY,
        Appellee

JUDGE DEE D. DRELL
MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Renny Plessala ("Plessala") filed a claim for social security disability insurance benefits ("DIB") on August 5, 2008 when he was 49 years old, and amended it on November 28, 2008 (Tr. p. 145), alleging a disability onset date of September 15, 2003 (Tr. pp. 142, 145) due to three prior "lower back disk surgeries," pain and numbness in both legs, back pain, problems sleeping, and depression (Tr. p. 179).  That claim was denied by the Social Security Administration ("SSA") both initially and on reconsideration (Tr. pp. 70, 76).

A de novo hearing was held before an Administrative Law Judge ("ALJ") on November 12, 2010, at which Plessala appeared with his attorney and a vocational expert ("VE") (Tr. p. 26).  The ALJ found that, although Plessala suffers from a severe impairment, L4-S1 surgical residuals, he last met the insured status requirements on March 31, 2009,[1] and at that time he had the residual functional

---

[1] The ALJ's initial statement in his decision that Plessala last met the disability insured status requirements on March 1, 2009 is erroneous (Tr. p. 15).  The ALJ later states in his decision that Plessala last met the disability insured status requirements on March 31, 2009, and the SSA's DIB insured status

capacity to perform light work except that he should avoid crawling or climbing ladders, ropes, or scaffolds, he has to sit five minutes for every 20 minutes he stands/walks, he cannot spend more than 1/3 of an eight-hour workday climbing ramps/stairs, balancing, stooping, kneeling, and crouching, and he should avoid concentrated exposure to hazardous work environments (Tr. p. 17). The ALJ concluded that, as of March 31, 2009, Plessala could work as a cashier II (unskilled, light work), storage facility clerk (unskilled, light work), or gate guard (semi-skilled, light work), and therefore was not disabled at any time through the date he was last insured, March 31, 2009 (Tr. p. 20).

Plessala requested a review of the ALJ's decision, but the Appeals Council declined to review it, and the ALJ's decision became the final decision of the Commissioner of Social Security (Tr. p. 1).

Plessala next filed this appeal for judicial review of the Commissioner's final decision. Plessala raises the following issues on appeal (Doc. 8):

> 1. The ALJ erred in finding that Plessala had the ability to perform full time work at any exertional level.
>
> 2. The ALJ erred in failing to properly explain why he did not credit Plessala's testimony.
>
> 3. The ALJ erred in failing to find the claimant's condition had worsened between 2004 and 2009.
>
> 4. The ALJ's decision is not supported by substantial evidence.

The Commissioner filed a brief in response to Plessala's appeal (Doc. 13). Plessala's appeal is now before the court for

2

disposition.

## Eligibility for DIB

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(I), 423. Establishment of a disability is contingent upon two findings. First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423 (d)(1)(A). Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

## Summary of Pertinent Facts

### 1. Medical Records

In October 2003, Plessala was evaluated by Dr. John S. Boggs, a neurosurgeon, for a second opinion with respect to a ruptured lumbar disc (Tr. p. 332). Dr. Boggs noted that Plessala was a 43-year-old marine electrician, had been operated on in 1998 by Dr. Arnold zeal for an L5-S1 disc rupture on the left side, was re-operated on twice thereafter with a good ultimate recovery(Tr. p. 332). Plessala returned to work with residual pain down the back of his left leg, for which he took Ibuprofen, but began developing pain in the back radiating down the right leg which became progressively more severe (Tr. p. 332). Dr. Boggs noted that

3

Plessala had been told by another doctor to stop working; his pain was worse when he stood and was usually relieved by sitting (Tr. p. 332). Plessala was taking Ibuprofen, Flexeril, Lortab (three per day), and Norvase (Tr. p. 332). Dr. Boggs found that Plessala was properly weighted, well muscled, and very matter-of-fact; he walked without a limp, resisted forward flexion more than about 30 degrees due to right leg pain, was able to heel and toe walk, and his knee and ankle jerks were 2+ bilaterally (Tr. p. 332). Dr. Boggs found an L4-5 ruptured disc with a small fragment eccentric to the right causing his symptomatology (Tr. p. 333). Since Plessala had no muscle weakness, Dr. Boggs recommended conservative treatment with trans-foraminal epidurals, discontinuation of physical therapy, and reduction of his Lortab (Tr. p. 33).

In December 2003, Plessala had good results from the lumbar transforaminal epidural on the right side, his leg pain was nearly completely gone, and he had slightly positive straight leg raising on the right; he returned to physical therapy (Tr. p. 331). In January 2004, Plessala reported a flare-up of leg pain, straight leg raising was positive in the extreme on the right, and Dr. Boggs diagnosed continued mild radiculopathy of the right leg, with improvement from where he had started (Tr. p. 330). Plessala's Lortab, physical therapy, and epidurals were continued (Tr. p. 330).

In July 2004, a lumbar myelogram of Plessala's CT spine showed extensive degenerative postoperative changes at L5-S1, no focal recurrent disc herniation, and no change in the mild canal stenosis

4

recurrent disc herniation, and no change in the mild canal stenosis with a disc osteophyte complex at L4-5 (Tr. pp. 268-269).   In November 2004, Plessala's lumbar discogenic disease with radiculopathy was treated with spinal steroid injections (Tr. p. 274).

In December 2004, Plessala's epidurals were discontinued because they had not really helped and his back-to-left leg pain persisted (Tr. p. 329).  Plessala was continued on Lortab (two to three times per day) and Ibuprofen, and was prescribed Ambien for sleep (Tr. p. 329).   Plessala's light duty work status was continued (Tr. p. 329).

In April 2005, Plessala reported increased pain in his back radiating down his left leg, worse when he walked and clearing up when he sat; he had minimally positive straight leg raising, and he was continued on light duty work status (Tr. p. 327).   In June 2005, Plessala was prescribed Amyitriptyline HS and continued on Ambien (Tr. p. 326).  In September 2005, he had pain on the left side when he stood for any length of time that was relieved by sitting down; his light duty status was continued (Tr. p. 325).

In March 2006, Plessala was having difficulty sitting for long periods of time or walking any distance; he was prescribed hydrocodone (Tr. p. 324).  In September 2006, Plessala was having pain in his left buttock radiating down his left leg when he stood or walked, but sitting did not bother him very much; his medication was continued (Tr. p. 323).

In September 2006, Dr. Boggs noted that Plessala was in school

5

for computer programming, sitting did not bother him very much, and most of his pain occurred when he stood or walked, with pain radiating from his left buttock down the back of the left leg (Tr. p. 285). Plessala had minimally positive straight leg raising, and was told to continue taking Lortab (Tr. p. 285).

In January 2007, Plessala's lumbar spine was straight, he could heel and toe walk, and he walked without a limp, but he was tender in the lumbosacral junction, and had spells of back and hip pain and numbness in his left foot (Tr. pp. 284, 322). His medications were continued (Tr. p. 323). In July 2007, Dr. Boggs noted that Plessala was looking for a work internship, denied Plessala's request for a sleep aid, noted that Plessala was taking three Lortabs as before, found Plessala walked without a limp, had negative straight leg raises, and his knee and ankle jerks were 1+ bilaterally (Tr. pp. 283, 321). In December 2007, Dr. Boggs wrote that Plessala had completed his computer programming school and internship, was still having back pain with radiation down the left leg and numbness into the left foot, had previous muscle spasm, and his straight leg raises were positive on the left in the extreme (Tr. pp. 282, 320). Dr. Boggs prescribed Robaxin and placed Plessala on a light duty work status with lifting up to 15 pounds regularly and up to 25 pounds occasionally, and no standing or walking in an uninterrupted fashion for more than 20 minutes (Tr. p. 282).

In May 2008, Dr. Boggs stated that Plessala could work as long as his job fit within the previously assigned limitations (Tr. p.

a slight limp and continued him on the same medications and work limitations; Dr. Boggs explained that, since Plessala was relatively functional, he should try to live with the pain (Tr. pp. 280, 318).

Also in June 2008, Dr. Boggs wrote that Plessala has severe low back pain with nerve damage to his left leg that makes it nearly impossible for him to stand in one position for more than ten or fifteen minutes (Tr. p. 319). Dr. Boggs released Plessala to return to work, stating he can lift up to 15 pounds regularly and 25 pounds occasionally, but cannot stand or walk in an uninterrupted fashion for more than twenty minutes (Tr. p. 317).

In September 2008, Dr. Boggs noted Plessala's complaints of radiating pain down the left leg and sometimes the right leg; he had positive straight leg raises bilaterally, more on the left, and fairly significant muscle spasm in the lower back with a rigid back (Tr. pp. 287, 316). In December 2008, Dr. Boggs noted Plessala walked with a significant limp, his low back was tender diffusely across the back, and he had positive straight leg raising on the left (Tr. p. 342). Dr. Boggs continued his hydrocodone prescription, and reiterated that Plessala's job restrictions are no lifting over 15 pounds, no prolonged stooping or bending, must be able to shift positions on a frequent and regular basis, and should not be required to stand or walk for more than twenty minutes at a time (Tr. p. 342).

An MRI in January 2009 of Plessala's lumbar spine showed (1) post-left hemilaminectomy degeneration of the disc at the L5-S1

7

level, with diffuse spondylitic disc bulging severely narrowing the neural foramina with probable compression of the exiting S1 nerve roots, (2) degeneration of the L4-5 disc with circumferential disc bulging producing severe right foraminal stenosis, moderate left foraminal stenosis, and mild acquired central canal stenosis, and (3) desiccation of the T11-T12 disc with small right paracentral focal disc protrusion (Tr. p. 337). Dr. Boggs stated there was no definitive evidence of a condition that could be definitively improved with another operation, but said if an operation were to be done, it would be an L4-L5 and L5-S1 discectomy, lyses of the scar, and fusion (Tr. p. 339, 443). Dr. Boggs continued Plessala's hydrocodone (Tr. pp. 339, 443).

In February 2009, Plessala had a physical evaluation at the University of Florida Family Practice Center, for complaints of difficulty sleeping due to sharp, constant back pain and anxiety (Tr. p. 425). Plessala was diagnosed with back pain and insomnia, and was prescribed lisinopril for hypertension and alprazolam for anxiety (Tr. p. 426).

Dr. Hung V. Tran, a family medicine doctor employed by the state Office of Disability Determinations, examined Plessala in March 2009 (Tr. p. 358). Dr. Tran noted Plessala was 49 years old, 5'10" tall, and weighed 158 pounds (Tr. pp. 358-359). Dr. Tran found that Plessala's spine was normal in shape, he had a limited range of motion in his thoracic and cervical spine in the sitting or supine positions, and he had pain in the lumbar spine; however, he had a full range of motion, no muscle spasms, and negative

8

straight leg raises bilaterally (Tr. p. 360).

In April 2009, Plessala reported a spontaneous increase in pain in his lower back to Dr. Boggs (Tr. p. 432). Dr. Boggs noted neuropathic pain radiating to the left leg, difficulty walking, and that his pain was worse when up and walking than when sitting (Tr. p. 432). Plessala had limited movement in his back, particularly in the left lateral bending and left forward flexion, and positive straight leg raising on the left (Tr. p. 432). Dr. Boggs diagnosed exacerbation of pain in both his back and leg, recommended a lumbar facet block, and prescribed hydrocodone and methocarbamol (Tr. p. 432). In July 2009, Dr. Boggs attempted to administer a lumbar facet block at L3-L4 to treat Plessala's lumbar spondylosis with pain, but was unable to inject him at L4-L5 due to an extensor spasm (Tr. p. 431). In October 2009, Plessala reported that the facet injection he received had helped somewhat; Dr. Boggs found Plessala was tender at the lumbosacral junction, had difficulty with right and left lateral bending, and his straight leg raising was positive on the left, and continued his medications (Tr. pp. 430, 439).

Also in May 2009, Dr. Nicolas H. Bancks, M.D., a diagnostic radiologist, filled out a physical residual functional capacity assessment form for Plessala after reviewing his medical records (Tr. pp. 365-380). Dr. Bancks stated that Plessala can lift up to 20 pounds occasionally and ten pounds frequently, stand/walk for a total of six hours in an eight-hour workday, sit for six hours in an eight-hour workday but must periodically alternate sitting and

9

standing to relieve pain or discomfort, and can do unlimited pushing and pulling (Tr. p. 366). Dr. Banks further found that Plessala can climb ramps/stairs frequently and ladders/ropes, scaffolds occasionally, balance, stoop, or kneel occasionally, crouch occasionally, and crawl frequently (Tr. p. 367).

In January 2010, Dr. Boggs found Plessala walked with a significant limp, had positive straight leg raising in both legs, and a list of the lumbar region with muscle spasms in the lower back, and again recommended lumbar facet injections for Plessala's lumbar spondylosis with pain and radiculopathy (Tr. pp. 437-438). On May 21, 2010, the injections were carried out normally at L3-L4, L4-L5, L5-S1 on both the left and right (Tr. p. 437). Dr. Boggs also noted that Plessala had worn out a lumbar corset with lumbar support that helped him a lot, particularly when driving (Tr. p. 438). Dr. Boggs ordered a new cybertech brace with lumbar supports to be worn as needed (Tr. p. 438).

In May through November 2009, Plessala was examined at the University of Florida Family Practice Center for hypertension, insomnia, anxiety, and back pain (Tr. pp. 383-418). Plessala was diagnosed with back pain, insomnia, and benign essential hypertension, and his prescriptions were renewed (Tr. pp. 383-418). In December 2009 through May 2010, Plessala continued to be monitored and have his prescriptions renewed at the Family Practice Center (Tr. pp. 443-499). On May 24, 2010, the Family Practice Center found Plessala had a limited range of motion in the upper and lower extremities and his back, with joint and back tenderness

10

(Tr. p. 498).  On August 8, 2010, the Family Practice Center noted that Plessala still had back pain and tenderness with a decreased range of motion, but had a normal gait and station, good muscle tone, and no limitation of motion of any joint (Tr. p. 492).

2. November 2010 Administrative Hearing

Plessala testified at his November 2010 administrative hearing that he was divorced, right-handed, 51 years old, about six feet tall, and had lost about 25 pounds in the last two years (Tr. pp. 35-36).

Plessala previously worked as a first-class marine electrician from June 1987 through September 2003, doing electrical work to repair marine ships and Navy ships and in new construction of marine ships (Tr. pp. 39-40).  Plessala testified that he had to read blueprints, and at one point he was supervising eight other people, making sure they did their work (Tr. pp. 40-41).  Plessala testified that he hurt his back when he lifted a giant shore power cable that weighed about eight pounds per foot (Tr. p. 42); he said he used to have to lift 75 to 100 pounds (Tr. p. 43).

Plessala testified that, after his injury, he worked for Florida State College as an intern for about four months, to fulfill a requirement for his class (Tr. p. 37).  Plessala testified he had also worked about eight months for a car dealer, delivering cars once or trice a month (Tr. p. 38).

Plessala testified that he received worker's compensation after he injured his back (Tr. p. 43).  Plessala then attended college for two years, for computer programmer training, and did

11

his internship in 2007 (Tr. p. 44). Plessala testified that his worker's compensation insurance paid for his college, but he later discovered that he needs at least a bachelor's degree to find a job in computer programming (Tr. p. 44). Plessala testified that he could not afford to return to college (Tr. p. 44).

Plessala testified that he has had back pain every day from the time he stopped working through March 2009 (Tr. pp. 45, 52). Plessala testified that he also had a shooting pain that went down his back, into the back of his leg, around to the front of his leg, and down to his foot, then he would become numb from the knee down (Tr. p. 52).

Plessala testified that, at that time, he lived in a house by himself, washed his clothes, did not always fold them because he had difficulty bending, and sat on a stool to wash dishes and cook, but he could not do yard work; a neighbor cut his grass for him (Tr. pp. 45-46).

Plessala testified that he could talk or stand about 45 minutes before he had to sit for about fifteen minutes to relieve the pressure on his spine; if the pain was very bad, he had to lie down for fifteen or twenty minutes (Tr. pp. 47-48, 50). Plessala testified that, later in the day, his pain increased (Tr. p. 47). Plessala testified that he had about two bad days a week, when he had more pain when he stood or walked and ached when he sat, so he would lie down for a while and walk around a while (Tr. pp. 48-49). Plessala testified that, after sitting for about 45 minutes, his back ached and he had to get up and walk for fifteen to twenty

12

minutes, then sit down again (Tr. p. 49). Plessala also had to walk around after he laid down too long (Tr. p. 50). Plessala testified that he could lift/carry about fifteen pounds (Tr. p. 52).

Plessala testified that, at night, he tossed and turned and could not sleep because his neck and back ached, so his doctor had prescribed a sleep aid (Tr. p. 50). Plessala testified that he had to take a 45 minute nap almost every day because he did not sleep well at night, and sometimes he took more than one nap (Tr. pp. 51-52).

The VE testified that Plessala's work as a marine electrician was medium work which Plessala had indicated was heavy work as he performed it (DOT 825.381-030, SVP 8) (Tr. p. 56). The VE further testified that Plessala had work skills that were transferable to light or sedentary work, such as reading blue prints, using hand tools, and wiring (Tr. p. 56).

The ALJ posed a hypothetical involving a younger individual with two years of college, primarily in computer programming, completed in December 2007, who has had three low back surgeries, has degenerative disc disease of the lumbosacral spine from L4 to S1 and scar tissue in that area, can perform light work but cannot crawl or climb ladders, ropes or scaffolds, must sit five minutes for every twenty minutes that he stands or walks, can lift/carry twenty pounds occasionally and 10 pounds frequently, can individually climb ramps and stairs, balance, stoop, kneel, or crouch for up to 1/3 of an eight-hour day, and should avoid

13

concentrated exposure to hazardous work environments (Tr. pp. 57-58).

The VE testified that such an individual would not be able to do Plessala's past relevant work, but could work as a cashier II (DOT 211.462-010, SVP 2, light work, 3,439,380 jobs in the national economy and 222,710 in Florida), a storage facility rental clerk (DOT 295.367-026, SVP 2, light work, 416,950 jobs in the national economy and 25,320 jobs in Florida), or a gate guard for a gated community (not an industrial facility) (DOT 372.667-030, SVP 3, light work, 1,128,830 jobs in the national economy, 77,120 in Florida) (Tr. pp.59-60).

The ALJ posed a second hypothetical involving a person of Plessala's age and education, who is limited to lifting and carrying up to fifteen pounds "infrequently, maybe half a dozen times during an eight-hour work day," and ten pounds for up to two-thirds of an eight-hour workday, he must sit five minutes for every twenty minutes that he stands or walks, during the morning he requires a sixty to seventy-five minute break, during the afternoon he requires a two-hour work break, and he will unpredictably miss up to three to four days each month (Tr. p. 61).  The VE testified there are no jobs such a person could perform (Tr. p. 62).

The VE further testified that most employers would have a one month probationary period, during which an employee would not be allowed to miss more than two days (Tr. p. 63).

### ALJ's Findings

To determine disability, the ALJ applied the sequential

14

process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Plessala (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir. 1987).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Plessala had not engaged in substantial gainful activity from the alleged onset date of September 15, 2003 through the date last insured, March 31, 2009 (Tr. p. 15), and he has a severe impairment of L4-S1 surgical residuals, but he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix

15

1 (Tr. p. 15).   The ALJ also found that Plessala is unable to perform his past relevant work as a marine electrician (Tr. p. 19).

At Step No. 5 of the sequential process, the ALJ further found that Plessala has the residual functional capacity to perform the full range of light work except that he should avoid activities that require crawling or climbing ladders, ropes, or scaffolds, he has to sit five minutes for every 20 minutes he stands/walks, he can individually climb ramps/stairs, balance, stoop, kneel, and crouch for no more than 1/3 of an eight-hour workday, and he should avoid concentrated exposure to hazardous work environments (Tr. p. 17).   The ALJ found the claimant is a younger individual with a high school education, two years of college, and transferable work skills (Tr. p. 19).   The ALJ concluded there are a significant number of jobs in the national economy which Plessala can perform, such as cashier II, storage facility clerk, and gate guard; therefore, Plessala was not under a "disability" as defined in the Social Security Act at any time through the date he was last insured, on March 31, 2009 (Tr. p. 20).

### Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors.   McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999).   For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support

16

a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).  Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.  The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.  Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court.  Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981).  Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992).  The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125.  But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence."  Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## Law and Analysis

Plessala addressed all four of his appellate issues in one

17

argument because they are related, and that is the way they are considered herein.

Plessala contends the ALJ erred in finding Plessala had the ability to perform full time work at any exertional level due to pain. Plessala argues the ALJ erred in failing to properly explain why he did not credit Plessala's testimony that his back hurts everyday and he cannot function normally an average of two days per week, and in failing to find his condition had worsened between 2003 and 2009. Therefore, the ALJ's decision is not supported by substantial evidence.

Although a claimant's assertion of pain or other symptoms must be considered by the ALJ, 42 U.S.C. § 423(d)(5)(A) requires that a claimant produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged. The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain will not take precedence over conflicting medical evidence. Harper v. Sullivan, 887 F.2d 92, 96 (5th Cir. 1989), citing Owens v. Heckler, 770 F.2d 1276, 1281 (5th Cir. 1985). The mere existence of pain is not an automatic ground for obtaining disability benefits. The factual determination of whether the claimant is able to work despite some pain is within the discretion of the Administrative Law Judge and will be upheld if supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980).

A claimant's symptoms, including pain, will be determined to diminish a claimant's capacity for basic work activities to the

18

extent that the claimant's alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §404.1529(c)(4).  Subjective complaints of pain must be corroborated by objective medical evidence.  Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2000).  Although severe pain can constitute a nonexertional impairment, pain is a disabling condition only when it is constant, unremitting and wholly unresponsive to therapeutic treatment.  Chambliss, 269 F.3d at 522.

While pain can be severe enough to create a disabling condition, the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled.  Elzy v. Railroad Retirement Bd., 782 F.2d 1223, 1225 (5th Cir. 1986); Loya v. Heckler, 707 F.2d 211, 215 (5th Cir. 1983).  The ALJ's decision on the severity of pain is entitled to considerable judicial deference.  James v. Bowen, 793 F.2d 702, 706 (5th Cir. 1986); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987).  Such a credibility determination is within the province of the ALJ.  Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991); Wren v. Sullivan, 925 F.2d 123, 128-29 (5th Cir. 1991).  Hence, the law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints and articulate his reasons for rejecting any subjective complaints.  Falco v. Shalala, 27 F.3d 162, 163-64 (5th Cir. 1994).

Although a claimant's assertion of pain or other symptoms must

19

be considered by the ALJ, 42 U.S.C. § 423(d)(5)(A) requires that a claimant produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged. The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain will not take precedence over conflicting medical evidence. Harper v. Sullivan, 887 F.2d 92, 96 (5th Cir. 1989), citing Owens v. Heckler, 770 F.2d 1276, 1281 (5th Cir. 1985).

The ALJ made the following findings as to Plessala's pain and credibility (Tr. pp. 18):

> "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible, because there is no evidence of any significant worsening in the claimant's medical condition. He testified that his major problem is his back and he is in pain daily. However, he is able to perform his activities of daily living, which consists [sic] of light housework, washing clothes and the dishes, and cooking while sitting on a stool without any difficulty. Although the claimant has received treatment for the allegedly disabling impairment, that treatment has been essentially routine and/or conservative in nature. Also, claimant's treating physician released him to go back to work with...restrictions...".

Since the ALJ in this case has made the mandatory indication of the basis for his credibility choices concerning claimant's complaints, and since his choices are not unreasonable, his finding that Plessala's pain would not prevent Plessala from performing work is proper. Carry v. Heckler, 750 F.2d 479, 485-86 (5th Cir. 1985). The ALJ adopted the work limitations imposed by Plessala's treating physician, Dr. Boggs. Since the medical evidence

20

indicated that Plessala can work, the ALJ found that Plessala's testimony, that he cannot work, was not supported by medical evidence. Moreover, the ALJ did not find Plessala's condition had not worsened between 2003 and 2009; he found it had not *significantly* worsened. That finding is supported by Dr. Boggs' continued finding that Plessala could work.

Therefore, substantial evidence supports the ALJ's credibility determinations and the Commissioner's conclusion that Plessala is not disabled by pain.

### Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be AFFIRMED and Plessala's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _14th_ day of December 2012.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE